IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | | |
|---|---|---|
| TOM G. PALMER, et al., | ) | No. 14-7180 |
| | ) | |
| Plaintiffs-Appellees, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DISTRICT OF COLUMBIA, et al., | ) | |
| | ) | |
| Defendants-Appellants. | ) | |
| _____ | ) | |

APPELLEES' MOTION FOR SUMMARY AFFIRMANCE

Come now Appellees Tom G. Palmer, Amy McVey, George Lyon, Edward Raymond, and Second Amendment Foundation, Inc., and move this Court for entry of an order summarily affirming the decision below.

INTRODUCTION

The Second Amendment's instruction that "the right of the people to keep and bear arms, shall not be infringed," foments many legitimately difficult disputes. This case is not among them. While federal appellate courts have split on the question of how far the right to bear arms might be regulated, nearly all the circuits presented with the issue

1

have opted to follow the Supreme Court's controlling precedent on this one salient point: the right, of whatever dimension, and however applied in any particular case, exists.

Because the right exists, it cannot be effectively prohibited. The District of Columbia's City Council cannot repeal an enumerated constitutional right—not as a general matter, and not owing to the city's role as our Nation's capital. The Bill of Rights contains a right to bear arms, and it applies here. The opinion below, enjoining the practical prohibition of a constitutional right, is unassailable. "[N]o benefit will be gained from further briefing and argument of the issues presented." *Taxpayers Watchdog, Inc.* v. *Stanley*, 819 F.2d 294, 298 (D.C. Cir. 1987) (per curiam).

STATEMENT OF FACTS

The facts below were not contested.

1. The Relevant Regulatory Regime

At this lawsuit's outset, D.C. Code § 22-4504(a) (2008)[1] provided that

[n]o person shall carry within the District of Columbia either openly or concealed on or about their person, a pistol, without a license

---

[1] All further statutory references are to the District of Columbia Code.

issued pursuant to District of Columbia law, or any deadly or dangerous weapon capable of being so concealed.

In theory, handgun carry licenses had once been available for "good" or "proper" reasons under § 22-4506(a) (2008). But "[i]t [was] common knowledge . . . that with very rare exceptions licenses to carry pistols ha[d] not been issued in the District of Columbia for many years and [were] virtually unobtainable." *Bsharah* v. *United States*, 646 A.2d 993, 996 n.12 (D.C. 1994).[2]

In any event, Section 22-4506 was repealed effective May 20, 2009. See Inoperable Pistol Amendment Act of 2008, D.C. Act 17-690, 56 D.C. Reg. 1162, 1165 (Jan. 16, 2009). An amendment effective September 26, 2012, struck the reference to a handgun carry license from Section 22-4504(a), conforming its language to Section 22-4506's repeal. See D.C. Act 19-366, 59 D.C. Reg. 5691, 5697 (May 25, 2012).

Separately, Section 7-2502.01(a) mandated (and still mandates) handgun registration. At the time this lawsuit was filed, Section 7-2502.02(a)(4) (2008) provided that individuals who were not retired

---

[2]When this provision was first enacted, licenses were only required to carry concealed handguns; the licensing requirement was not extended to the open carrying of handguns until 1943. See *Cooke* v. *United States*, 275 F.2d 887, 889 n.3 (D.C. Cir. 1960).

3

police officers could only register a handgun "for use in self-defense within that person's home." Accordingly, handgun registration applicants were required to provide a "brief statement of your intended use of the firearm and where the firearm will be kept." See Dist. Ct. Dkts. 5-9, 5-10, 5-11. Moreover, Defendants-Appellants District of Columbia and its Police Chief, Cathy Lanier, refused to consider registration applications absent proof of District residence.

2. The Law's Application Against Plaintiffs.

Defendants denied Plaintiffs-Appellees Tom Palmer, Amy McVey and George Lyon's handgun registration applications when each Plaintiff averred the he or she would carry their handguns in public for the purpose of self-defense. See Dist. Ct. Dkts. 5-9, 5-10, 5-11. Plaintiff Edward Raymond, who had previously been arrested and prosecuted for unlicensed handgun carrying in his car, was denied a handgun registration application on account of his residence outside the District. See Raymond Decl., Dist. Ct. Dkt. 5-6, ¶ 8.

3. The Litigation Below

On August 6, 2009—after Section 22-4506 had been repealed, but years before Section 22-4504 would lose its reference to a handgun

4

carry license—Plaintiffs brought this lawsuit. Palmer, McVey, Lyon, and Raymond, joined by the Second Amendment Foundation (of which they are members), challenged the handgun carry prohibition as well as the residency requirement for handgun registration and, by extension, handgun carrying. Plaintiffs asserted their Second and Fifth Amendment (right to travel, equal protection) rights. Defendants contended that the Second Amendment does not secure any rights outside the home, and that in any event, the District should not be forced to acknowledge that right owing to its character as the national capital. They also disputed Plaintiffs' Fifth Amendment claims.

The parties filed cross-motions for summary judgment, which stood fully briefed on October 6, 2009. Nonetheless, the case languished undecided for years, despite Plaintiffs' repeated efforts to accelerate a decision. See *In re Palmer*, No. 13-5317. On July 26, 2014, the District Court granted Plaintiffs' motion and denied Defendants' motion. The District Court entered a final judgment for Plaintiffs on July 29, 2014.

"The [Supreme] Court explained that self-defense, recognized since ancient times as a 'basic right,' was the 'central component' of the Second Amendment guarantee." Memorandum Decision & Order, Dist.

Dkt. 51, at 9 (quoting *McDonald* v. *City of Chicago*, 130 S. Ct. 3020, 3036 (2010)). Accordingly, the District Court was required to "to decide whether the restricted activity" in which Plaintiffs would engage, "a restriction on a responsible, law-abiding citizen's ability to carry a gun outside the home for self-defense falls within the Second Amendment right to keep and bear arms for the purpose of self defense." *Id.* at 10.

"[A]s the Supreme Court explained . . . 'at the time of the founding, as now, to 'bear' meant to 'carry.'" *Id.* at 11 (quoting *District of Columbia* v. *Heller*, 554 U.S. 570, 584 (2008)) (internal punctuation omitted).

> According to the *Heller* majority, the "natural meaning of 'bear arms'" was the one that Justice Ginsburg provided in her dissent in *Muscarello v. United States*, 524 U.S. 125 (1998), that is "'wear, bear, or carry . . . upon the person or in the clothing or in a pocket, for the purpose . . . of being armed and ready for offensive or defensive action in a case of conflict with another person.'"*Heller*, 554 U.S. at 584 (quoting *Muscarello*, 524 U.S. at 143, 118 S. Ct. 1911) (Ginsburg, J., dissenting) (quoting Black's Law Dictionary 214 (6th ed. 1998)).

*Id.* at 11-12.

The District Court then explained that "the very risk occasioning such carriage, 'confrontation,' is 'not limited to the home.'" *Id.* at 12 (quoting *Peruta* v. *Cnty. of San Diego*, 742 F.3d 1144, 1152 (9th Cir.

6

2014)); *Moore* v. *Madigan*, 702 F.3d 933, 936 (7th Cir. 2012).

> [I]t is beyond dispute that "the prospect of conflict—at least, the sort of conflict for which one would wish to be 'armed and ready'—is just as menacing (and likely more so) beyond the front porch as it is in the living room."

*Id.* (quoting *Peruta*, 742 F.3d at 1152). The District Court then noted that per the Supreme Court, the Second Amendment right is "most acute" in the home, and secured "most notably" for home self-defense, terms that exclude the possibility that the right is limited to the home. *Id.* (citations omitted). "[B]oth *Heller* and *McDonald* identif[ied] the 'core component' of the right as self-defense, which necessarily 'take[s] place wherever [a] person happens to be,' whether in a back alley or on the back deck." *Id.* at 12-13 (quoting *Peruta*, 742 F.3d at 1153) (citations omitted). "[T]he Second Amendment right could not rationally have been limited to the home." *Id.* at 13 (quotation omitted).

> [H]aving concluded that carrying a handgun outside the home for self-defense comes within the meaning of "bear[ing] Arms" under the Second Amendment, the Court must now ask whether the District of Columbia's total ban on the carrying of handguns within the District "infringes" that right. This question is not difficult to answer.

*Id.* at 15.

> In light of *Heller*, *McDonald*, and their progeny, there is no longer any basis on which this Court can conclude that the District of

Columbia's total ban on the public carrying of ready-to-use handguns outside the home is constitutional under any level of scrutiny.

*Id.* at 16. The District Court thus enjoined Section 7-2502.02(a)(4)'s home limitations, and Section 22-4504(a)'s carrying prohibition "unless and until such time as the District of Columbia adopts a licensing mechanism consistent with constitutional standards enabling people to exercise their Second Amendment right to bear arms." *Id.* The injunction covered non-residents, *id.*, and the Court thus found that Plaintiffs' equal protection and right to travel claims were co-extensive with the Second Amendment claim, or not ripe. *Id.* at 16-17.

With Plaintiffs' consent, the District Court stayed its judgment for 90 days, through October 22, 2014, to allow the District of Columbia to enact constitutionally-adequate remedial legislation. Dist. Ct. Dkt. 53. The District Court denied Defendants' motion for a 180 day stay, but allowed Defendants the opportunity to seek another stay by October 3, 2014, "setting forth in detail what, if any, progress they have made to comply with the Court's decision." Dist. Ct. Dkt. 66. October 3 came and went without a motion, and the stay expired October 22, 2014.

8

Meanwhile, on September 23, 2014, the City Council had unanimously passed emergency legislation, valid for 90 days upon the Mayor's signature, restoring Section 22-4504(a)'s pre-September, 2012 reference to a handgun carry license. Aside from omitting reference to non-concealable weapons, that provision now reads exactly as it did on the day this lawsuit was filed.[3]

The legislation also revived, nearly verbatim, the previous Section 22-4506(a). The only differences between the new and immediately preceding versions of this section are: (1) "The Chief of Police of the District of Columbia" is shortened to "the Chief;" (2) the licenses authorize not "carry" but "carry concealed;" and (3) licenses are valid for two years, not one. Critically, the legislation restores—word for word—the old "standard" guiding the issuance of licenses. The police chief "may" issue a license "if it appears that the applicant has good reason to fear injury to his or her person or property or has any other proper reason for carrying a pistol, and that he or she is a suitable

---

[3]By deleting language that would have exempted non-concealable weapons from the section's weapons-carrying ban, the law now apparently extends to rifles, shotguns, swords, etc., which are not at-issue in this litigation.

person to be so licensed." There is no question that Defendants' intent was to "reinstate the test for carrying a firearm that was in place for many years after [the] 1931 [sic] law . . . ."[4]

Defendants take the position that the revived Section 22-4506 complies with the District Court's order. Notwithstanding the stay's expiration, they continue enforcing the enjoined Section 22-4504 without having obtained the District Court's opinion as to their compliance. Defendants did move for reconsideration of the District Court's decision, which motion was denied in open court on October 17, 2014, and confirmed by a later opinion. See Dist. Ct. Dkt. 75.

On October 2, 2014, Plaintiffs moved to enforce the judgment, as Section 22-4506's near-blanket exclusion of the entire population (including Plaintiffs) from licensure does not satisfy the District Court's judgment.[5] Defendants noticed an appeal November 14. On November 18, Plaintiffs moved for an order holding Defendants in contempt.

---

[4]See *Mayor Gray, Chairman Mendelson and Councilmember Wells Propose Emergency Firearm Legislation*, available at http://mayor.dc. gov/release/mayor-gray-chairman-mendelson-and-councilmember-well s-propose-emergency-firearm-legislation (last visited Nov. 18, 2014).

[5]Owing to Section 22-4504's technical alterations, this essentially enforcement motion is styled as one seeking an injunction.

ARGUMENT

To read the District Court's opinion is to affirm. There is no need to fully recount the overwhelming, conclusive support for its decision. And notwithstanding the permanent controversy surrounding the right to bear arms, the District Court's holding is legally unremarkable. The Supreme Court, after all, has held that the Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation," *Heller*, 554 U.S. at 592, and "[c]onfrontations are not limited to the home." *Moore*, 702 F.3d at 936.

The term "bear" cannot be read as superfluous to "keep." See *Myers v. United States*, 272 U.S. 52, 151 (1926) ("[T]he usual canon of [constitutional] interpretation . . . requires that real effect should be given to all the words it uses") (citations omitted). Nor, for the numerous reasons provided in *Heller* and recited by the District Court, as recited above, is there any way to limit the Second Amendment right, as a matter of text, original meaning, or common sense, to the home. See generally Appellants' Supp. Br., *Dearth* v. *Holder*, No. 12-5305, Feb. 10, 2014, at 10-30. Briefing and argument here will not amend the Constitution.

Nor will briefing and argument here overrule *Heller*. As Judge Posner wrote for the Seventh Circuit, in striking down the Nation's only other blanket handgun carry prohibition, lower courts cannot "repudiate the [Supreme] Court's historical analysis." *Moore*, 702 F.3d at 935. History might be important, but on this score, it is also settled by controlling authority. "[W]e are bound by the Supreme Court's historical analysis because it was central to the Court's holding in *Heller*." *Id*. at 937.

> We are disinclined to engage in another round of historical analysis to determine whether eighteenth-century America understood the Second Amendment to include a right to bear guns outside the home. The Supreme Court has decided that the amendment confers a right to bear arms for self-defense, which is as important outside the home as inside.

*Id*. at 942.

Whatever else the District might do to regulate the carrying of handguns—an issue not raised in the instant appeal—it cannot destroy the exercise of this fundamental constitutional right.

> We are aware of the problem of handgun violence in this country . . . . Undoubtedly some think that the Second Amendment is outmoded . . . . That is perhaps debatable, but what is not debatable is that it is not the role of this Court to pronounce the Second Amendment extinct.

*Heller*, 554 U.S. at 636.

Indeed, federal appellate courts are deeply divided over the extent to which the right to bear arms might be regulated, but broad consensus holds that the right exists. See *Peruta*, supra, 744 F.3d 1144; *Moore*, supra, 702 F.3d 933; *Nat'l Rifle Ass'n of Am., Inc.* v. *McCraw*, 719 F.3d 338 (5th Cir. 2013) (upholding restrictions on right to carry by adults under age 21 after apparently assuming right exists); *Woollard* v. *Gallagher*, 712 F.3d 865, 876 (4th Cir. 2013); *Kachalsky* v. *Cnty. of Westchester*, 701 F.3d 81, 93 (2d. Cir. 2012); see also *id.* at 89 & n.10.

At the federal appellate level, only the Third Circuit has departed from this view. That court "recognize[d] that the Second Amendment's individual right to bear arms *may* have some application beyond the home." *Drake* v. *Filko*, 724 F.3d 426, 434 (3d Cir. 2013). But it offered that the enactment of state laws in 1913 and 1924, incompatible with a right to carry handguns, are "longstanding" evidence that the right does not encompass carrying handguns. *Id.* at 734.

Under this theory, *everything* is constitutional—if a law's enactment proves that no right was understood to be infringed, every legislative act is self-constitutionalizing. More to the point, the behavior of early

twentieth century state legislatures is irrelevant. "Constitutional rights are enshrined with the scope they were understood to have when the people adopted them, whether or not future legislatures . . . think that scope too broad." *Heller*, 554 U.S. at 634-35. And at the time the laws *Drake* cited were enacted, the Bill of Rights generally, and the Second Amendment in particular, were held inapplicable as against the states. *United States* v. *Cruikshank*, 92 U.S. 542 (1876), *overruled*, *McDonald* v. *City of Chicago*, 130 S. Ct. 3020 (2010). No lawyer sitting in those legislatures could have understood those enactments as commentary on the scope of a right binding only the federal government.

The District Court correctly concluded that the Second Amendment's textual guarantee of a right to carry guns for self-defense precludes a city from simply banning all defensive handgun carriage.

Undaunted, the Defendants claimed on reconsideration that the District Court erred by not applying a two-step, means-ends scrutiny analysis under *Heller* v. *District of Columbia*, 670 F.3d 1244 (D.C. Cir. 2011) ("*Heller II*"). But *Heller II* did not overrule *Heller I*, or, for that matter, this Court's opinion that the Supreme Court there affirmed, *Parker* v. *District of Columbia*, 478 F.3d 370 (D.C. Cir. 2007), both of

which made exceedingly clear the fact that means-ends scrutiny is not universally required in *all* Second Amendment cases. See *Parker*, 478 F.3d at 400 ("Once it is determined—as we have done—that handguns are 'Arms' referred to in the Second Amendment, it is not open to the District to ban them"); *id.* at 401 ("Section 7-2507.02, like the bar on carrying a pistol within the home, amounts to a complete prohibition on the lawful use of handguns for self-defense. As such, we hold it unconstitutional"); *Heller*, 554 U.S. at 628-29 ("Under any of the standards of scrutiny that we have applied to enumerated constitutional rights, banning from the home 'the most preferred firearm in the nation to 'keep' and use for protection of one's home and family' would fail constitutional muster") (quoting *Parker*, 478 F.3d at 400) (footnote omitted); *id.* at 630 ("The functional firearms ban "makes it impossible for citizens to use [guns] for the core lawful purpose of self-defense and is hence unconstitutional.").

After all, what is there to balance? The District cannot have an interest in prohibiting the exercise of a fundamental right, upon deciding, contrary to the Framers' considered judgment, that the right itself is a social evil. When a law flatly contradicts a constitutional

provision, there is no room for balancing. Policy arguments might easily be concocted to advance an established state church, or the denial of counsel to the accused, but courts have struck down such unconstitutional practices without resort to means-ends scrutiny. Courts often employ means-ends scrutiny because laws blatantly contradicting the Bill of Rights' commands are thankfully rare. But then, the law here is very unusual, in keeping with Defendants' persistent denials that the right even exists.

The only interest advanced by Defendants in prohibiting the exercise of Second Amendment rights, apart from their generalized belief that the right is socially harmful, is the familiar refrain about the District's unique role as our Nation's capital. The argument is specious. If the suspension of fundamental rights is required to secure the capital, why not also suspend the Fourth Amendment, and allow police an unfettered hand in disrupting plots against national security? In any event, this Court has heard—and rejected—the same exact claim with respect to the Second Amendment. "[T]he Supreme Court has unambiguously held that the Constitution and Bill of Rights are in effect in the District." *Parker*, 478 F.3d at 395 (citing *O'Donoghue* v.

*United States*, 289 U.S. 516, 539-41 (1933); *Downes* v. *Bidwell*, 182 U.S. 244, 260-61 (1901)).

Of course, Defendants may prohibit the carrying of handguns in "government buildings" and other "sensitive places," *Heller*, 554 U.S. at 626, but that does not mean that they might prohibit carrying guns in a *city* containing government buildings. None of the District's allegedly unique features justify erasing the Second Amendment wholesale throughout the entire city. Government facilities, visiting Presidents, historically important sites, and various foreign consulates and missions may be found throughout the United States. So is the right to bear arms, exercised peacefully by millions of law-abiding, responsible Americans every day.

Indeed, the District is not the only city whose urban uniqueness argument for a Second Amendment exemption failed. "Municipal respondents point out—quite correctly—that conditions and problems differ from locality to locality and that citizens in different jurisdictions have divergent views on the issue of gun control." *McDonald*, 130 S. Ct. at 3046. But that was not a reason to avoid insisting that the Second Amendment apply in full throughout the United States. Defendants

might "experiment" with regulations fitting local conditions, within constitutional limitations. Complete repudiation of an enumerated guarantee cannot be sustained, and it is not worth consuming any additional court resources debating a subject better suited, if at all, to a constitutional convention.

CONCLUSION

Plaintiffs-Appellees respectfully request that the District Court's judgment be summarily affirmed.

Dated:   November 19, 2014      Respectfully submitted,

                                Alan Gura
                                Gura & Possessky, PLLC
                                105 Oronoco Street, Suite 305
                                Alexandria, VA 22314
                                703.835.9085/703.997.7665

                          By:   /s/ Alan Gura
                                Alan Gura

                                Attorney for Appellees

CERTIFICATE OF SERVICE

I certify that on this 19th day of November, 2014, I filed the foregoing electronically with the Clerk of the Court using the CM/ECF System. I further certify that I will submit any required paper copies to the Court. I further certify that counsel for Defendants-Appellants is a registered CM/ECF user and will be served via the CM/ECF system.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this the 19th day of November, 2014.

/s/ Alan Gura
Alan Gura

*Counsel for Plaintiffs-Appellees*